UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO FILHO,<br><br>    Plaintiff,<br><br>    v.<br><br>CHINATOWN COMMUNITY DEVELOPMENT CENTER, INC.,<br><br>    Defendant. | Case No. 21-cv-05664-WHO<br><br>**ORDER GRANTING CONVERTED MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 57 |

Pro se plaintiff Roberto Filho alleges that defendant Chinatown Community Development Center, Inc. ("CCDC") violated the Fair Housing Act ("FHA") by failing to accommodate his disability when it refused to refer his request for a new apartment to another housing agency. After I converted CCDC's latest motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 12(d), the burden shifted to Filho to show a genuine dispute of material fact over whether CCDC had a contract or any sort of relationship with the other housing agency obligating CCDC to forward Filho's request. Filho has not met this burden. Accordingly, CCDC's converted motion for summary judgment is GRANTED.

**BACKGROUND**

Filho describes himself as having a "physical disability which substantially limits his life activities," including traumatic brain injury, human immunodeficiency virus ("HIV"), chronic fibrosis, and bladder and prostate issues. Second Am. Compl. ("SAC") [Dkt. No. 54] ¶¶ 6-7. On January 6, 2021, Filho and his social worker submitted a request to a CCDC site manager seeking to move to a one-bedroom apartment with a private kitchen and bathroom, an accommodation that Filho contends is necessary for him to use and enjoy his dwelling. *Id*. ¶¶ 10-11.

According to Filho, the site manager told him and his social worker that the transfer request must be sent to CCDC, then CCDC would send his request to Direct Access to Housing

("DAH"), another housing program in San Francisco. *See id*. ¶ 11. The SAC alleges that DAH "has the authority" over the property where Filho sought to be transferred: the Derek Silva Apartments, housing for people living with HIV that is located at 20 Franklin Street. *See id*. ¶¶ 13, 17. The site manager allegedly told Filho that CCDC had a contract with DAH. *See id*. ¶ 11. Filho alleges, however, that he asked CCDC for an update on his request on July 14, 2021, and was told that CCDC could not provide the accommodation. *Id*. ¶ 18.

Filho filed this suit on July 23, 2021, alleging that CCDC and another defendant, Jason Bermak, violated the FHA by not providing the requested accommodation. *See* Dkt. No. 1. After two motions to dismiss from Bermak and one from CCDC in which CCDC argued (among other things) that it did not own or operate the building where Filho sought to move, I dismissed the claim against Bermak with prejudice but granted Filho leave to amend the claim against CCDC. *See* Dkt. Nos. 34, 53. Filho filed the SAC on May 3, 2022, which CCDC moved to dismiss three weeks later, again arguing that it did not own or operate the building at 20 Franklin Street. Dkt. Nos. 54, 57.

Along with its second motion to dismiss, CCDC proffered a declaration from its deputy director of portfolio, attesting that CCDC's last contract with DAH expired in 2017, that there currently is no contract between the two, and that CCDC "does not have the ability to refer tenants to DAH." Mot. [Dkt. No. 57] Alvarez Decl. ¶ 4. In submitting the declaration, CCDC invited me to convert the motion to dismiss into one for summary judgment under Rule 12(d). *See id*. at 8:9-9:3.

I did so, finding that whether CCDC violated the FHA "depends on what, if any, relationship it has with DAH." Dkt. No. 63 at 4:24-25. I then directed Filho to "submit any evidence of a contract between CCDC or DAH, of CCDC forwarding requests for reasonable accommodations to DAH, or any other evidence that would show a dispute of material fact as to the relationship between the two entities." *Id*. at 5:15-19. Filho filed an opposition on July 15, 2022, and a declaration 10 days later, both of which were accompanied by exhibits. Dkt. Nos. 66, 67. After CCDC filed its reply, I heard arguments from both parties on August 31, 2022.

2

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

As I wrote when converting this motion into one for summary judgment, the dispositive question is whether CCDC has a contract or any sort of relationship with DAH under which it forwards requests such as Filho's, so that it might plausibly be liable under the FHA. Dkt. No. 63 at 1:15-17. "If the two entities in fact have a contract, as Filho alleges, that requires or otherwise obligates CCDC to forward accommodation requests to DAH, then CCDC may have violated the FHA in refusing to do so." *Id*. at 4:25-27. "If there is no such contract, policy, rule, or practice wherein CCDC forwards such requests to DAH, then Filho does not have a claim." *Id.* at 5:1-3.

CCDC's declaration confirms that it operates the William Penn Hotel located at 160 Eddy Street, where Filho lives, and that it does not own or operate 20 Franklin Street, where he seeks to move. *See* Mot., Alvarez Decl. ¶¶ 2-3. The declaration attests that CCDC has no contract with

DAH, that CCDC's last contract with DAH expired in 2017, and that CCDC "does not have the ability to refer tenants to DAH." *Id*. ¶ 4. It further states that "CCDC would not have the authority to grant or refuse" a request such as Filho's. *Id*. ¶ 5.[1]

Filho has been on notice of CCDC's primary argument—that it did not own or operate the building at 20 Franklin Street—since CCDC's earliest motion to dismiss. To overcome summary judgment, Filho had to proffer evidence showing a genuine dispute of material fact over a contract or any other sort of relationship between CCDC and DAH (after 2017) obligating CCDC to forward his request to DAH. He failed to do so.

Filho tried. He submitted five exhibits, none of which evidences a contract or relationship between CCDC and DAH after 2017 that would obligate CCDC to forward his request to DAH. The first exhibit, Exhibit 9, is a list of "money management programs" in San Francisco. *See* Oppo. [Dkt. No. 66] Ex. 9. Although it includes a description of DAH and lists "William Penn, Eddy St." among the covered properties and states that "referral is made by the property manager," the document is undated, does not mention CCDC, and does not show that CCDC and DAH had any relationship after 2017. *See id*. It is also unclear whether the "referral" referenced relates to housing requests or to a money management program. *Id*. Additional documents filed with Exhibit 9 include a description of DAH but make no mention of CCDC. *Id.* Exhibit 9 also includes a business card for an employee of Lutheran Social Services of Northern California. *Id*.

The next exhibit, Exhibit 10, is a history of Filho's rent payments at the William Penn Hotel from December 2015 to July 2022. *See* Oppo., Ex. 10. Although the document states "(DAH)" in the upper right corner, it does not explain that notation nor expressly articulate any sort of relationship with CCDC. *See id*. Exhibit 11 is a similar list of transactions, this time showing a summary of deposits of Filho's SSI benefits and rent charges at the William Penn Hotel, again dating back to December 2015. *See* Oppo., Ex. 11. Again, there is no mention of a relationship between DAH and CCDC. *See id*. Instead, both exhibits are printed on Lutheran

---

[1] CCDC affirmed these statements in two additional declarations submitted after oral argument, upon my direction that counsel confer with CCDC management "to confirm that all information presented in defense pleadings is accurate." *See* Dkt. Nos. 70, 71-1, 73.

Social Services of Northern California letterhead. *See* Oppo., Exs. 10, 11. In CCDC's supplemental declarations, the organization's site manager and deputy director of portfolio both stated that DAH subsidized a portion of Filho's monthly rent, but that "does not mean that CCDC has a contract with DAH" or that "CCDC has the ability to refer tenants to DAH." *See* Dkt. No. 71-1 ¶ 6; Dkt. No. 73 ¶ 6.

Filho's Exhibit 12 is a series of emails and a letter from the San Francisco Mayor's Office that appears to show that in May 2022, Filho indeed got a referral to apply to a unit at 20 Franklin Street—from the mayor's office. *See* Oppo., Ex. 12. Again, there is no reference to CCDC, nor any relationship between CCDC and DAH. *See id*.

Filho's final exhibit includes descriptions and photographs of two apartment buildings in San Francisco (the William Penn Hotel and the Rene Cazenave Apartments) along with the same business card included in Exhibit 9. *See* Filho Decl. [Dkt. No. 67] Ex. 13. The description of the William Penn Hotel states in part that it is managed by CCDC and "houses residents with a subsidy through the Department of Public Health's Direct Access to Housing program." *Id.* It further states that the William Penn Hotel "houses a Direct Access to Housing (DAH) program." *Id*. But this does not establish that by housing residents with a DAH subsidy or by housing a DAH program, CCDC is required to refer accommodation requests to DAH. Moreover, this document is not dated and does not establish that any such relationship existed after CCDC and DAH's last contract expired in 2017.

In sum, most of the evidence proffered by Filho does not mention CCDC, nor establish a relationship between CCDC and DAH wherein CCDC must forward accommodation requests to DAH. The only exhibit that mentions both agencies, the undated Exhibit 13, does not show that CCDC was required or had the authority to make referrals to DAH after 2017. Filho is proceeding pro se, and I have given him several opportunities to establish his claims. He has been on notice of the fundamental issue raised by CCDC for more than a year. His most recent submissions misunderstand their import. Meanwhile, he appears to have received the referral he wanted from the mayor's office, which apparently does have authority to do what he wanted. But he has not shown a genuine dispute of material fact whether CCDC and DAH had a contract or other

relationship that would require CCDC to forward his accommodation request to DAH.  Without such a relationship, CCDC is not liable under the FHA for Filho's claims.

## CONCLUSION

CCDC's converted motion for summary judgment is GRANTED.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: September 19, 2022



William H. Orrick
United States District Judge